872 P.2d 728

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Michael VIERRA, Defendant–Appellant.**

No. 20075.

Court of Appeals of Idaho.

April 6, 1994.

Ringert Clark, Chartered, Boise, for defendant-appellant. David Hammerquist, argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

PERRY, Judge.

Michael Vierra appeals from a judgment of conviction entered against him on seven counts of forgery and thirty-eight counts of embezzlement. For the reasons stated below, we affirm.

## FACTS AND PROCEDURE

In 1989, Michael Vierra began working for Topnotch, Inc. (Topnotch), which was owned and operated by Bret and Lori Berier. As the bookkeeper and office manager, Vierra's duties included supervision of the company's financial affairs. After voluntarily leaving his employment at Topnotch in February 1991, Vierra was charged with eight counts of forgery and thirty-eight counts of embezzlement arising out of Vierra's signing of checks on the Topnotch business account and using a corporate credit card. Following his arrest, the police searched Vierra's condominium and retrieved a file cabinet of corporate records.

Following a jury trial in April of 1992, Vierra was convicted of a total of forty-five counts and given concurrent unified sentences of fourteen years with five-year minimum terms of confinement on each count. He was also ordered to pay restitution, $119,-493.33 to the Beriers and $25,023.05 to First Security Bank.

Vierra appeals, citing no less than thirty-three instances of alleged error. Of those thirty-three errors alleged, we find the majority of them to be without merit and we reject them without discussion. We do conclude, however, that three specific areas warrant our attention. Those areas include the district court's failure to admit certain evidence that Vierra claims would have shown he had authority to make the expenditures in question, the district court's improper admission of evidence that may have been tampered with or that hadn't been properly disclosed and the district court's admission of evidence of other acts committed by Vierra for which he was not charged.

## ANALYSIS

### I.

Vierra first argues that the district court erred in failing to admit evidence of Bret Berier's other business ventures apart from Topnotch and evidence that Bret Berier had carried on an extramarital affair, for which he asked Vierra to make various arrangements.

### A. BRET BERIER'S OTHER BUSINESS DEALINGS

On appeal, Vierra claims that the other business dealings of Bret Berier were relevant to show that Vierra had done considerable work for Berier aside from his duties with Topnotch. This evidence would have included Bret Berier's dealings with Le Courtage, Bull & Berier Land and Cattle Co., Success Funding, the State Insurance Fund of Idaho and unspecified dealings with a broker from New York. Vierra argues that he was entitled to additional compensation for this work, that Bret Berier agreed to such compensation and that Vierra's authorization to use the company credit card and to write checks for personal expenses was part of that agreement.

■ We first note that whether evidence is relevant is a question of law over which we exercise free review. See I.R.E. 401 *and* 402; *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993).

Prior to trial, on the state's motion in limine, the district court excluded evidence of the other business dealings as irrelevant. At the hearing on the motion in limine, Vierra did not argue that the information was relevant to show that he was entitled to additional compensation for his work and that he had arranged such compensation with Bret Berier through the use of credit cards and personal checks. Instead, the information was offered for the vague purpose of establishing "the big picture" and to establish that Bret Berier had access to a Le Courtage post

office box that received statements of the credit card Vierra was using. At the hearing on the motion in limine, counsel for Vierra stated:

> The Le Courtage material is still relevant for our defense, Your Honor, because one of the things that's going to come out is the fact that Bret Berier knew about the Le Courtage. He knew about the P.O. box number that Le Courtage used, had access to it. And therefore, any statements, such as bank card statements, would have been sent to that P.O. box. Mr. Berier had access.
>
> . . . .
>
> Evidence, in general, Your Honor, about Mr. Berier is what the jury has to understand in his case, is: What is Topnotch? Who are the people that make up Topnotch, and who are these people themselves? How does Lori Berier work? How does she think? What does she do? How does Bret Berier work? How does he think? What does he do? What are his tendencies to do what and act upon a given situation?
>
> Because all that ties back into the credibility issue, why it's reasonable that Michael Vierra would have the authority to do the acts the state complains are crimes. With the big picture in mind, all this evidence we are seeking is certainly relevant. We have to understand the corporation's financial dealings, how they did the financial dealings, why.
>
> . . . .
>
> The contention that the evidence regarding Bull & Berier, Le Courtage and other general information is not related to the defense is incorrect. As I'm saying, it's the big picture that we're talking about. This helps establish the big picture. These people don't sit in an office every day and do other activities that leads to the explanation of why it was likely that Michael Vierra had the authority to do the acts in question.

■ Vierra, having lost the motion in limine, cannot on appeal advance other factual theories as to why the challenged evidence was relevant. *See Kinsela v. State, Dept. of Finance,* 117 Idaho 632, 634, 790 P.2d 1388,

1390 (1990); *Berning v. Drumright,* 122 Idaho 203, 209, 832 P.2d 1138, 1144 (Ct.App. 1992); 4 C.J.S. *Appeal and Error* §§ 202–205 (1993). Therefore, our free review is limited to the evidence, theories and arguments that were presented to the trial court below.

Having reviewed the record, we conclude that the district court did not err in rejecting this evidence. The district court's ruling on the motion was not that the evidence would be excluded absolutely, but that from the arguments made, the evidence appeared to be unrelated to the offenses charged and would needlessly distract the jury. The district court qualified this ruling by stating that if the evidence later became relevant to impeachment or on cross-examination, it would be admitted at that time. The district court specifically noted:

> [D]epending upon what the direct testimony is of some witnesses, there may be some items that may become relevant to cross-examination. What we're concerned about in this case is authorization to either sign the name or use the credit card. And if the evidence bears upon those items, fine, but we're not going to go back to the life history of Mr. Berier and do as they're doing in presidential campaigns right now, go back five, ten, twenty years, whatever it takes.

■ Given the arguments made below and the reasons put forth for the use of the evidence, we agree that evidence of Bret Berier's other business activities was properly excluded as irrelevant.

## B. EVIDENCE OF BRET BERIER'S ALLEGED EXTRAMARITAL AFFAIR

■ Vierra argues that the district court improperly excluded evidence that Bret Berier was involved in an extramarital affair. He argues that this information would have demonstrated Bret Berier's deceitfulness and desire to keep his wife from being involved in business affairs where she might discover the affair. This desire to keep the business dealings from his wife allegedly included keeping Vierra's compensation plan from her as well.

Vierra identifies this information as character evidence of the victim, Berier, but ar-

gues it should be admitted under I.R.E. 404(a)(2). That section states:

> **Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.**—(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (2) Character of victim. Evidence of a *pertinent* trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. [Emphasis added.]

In his brief, Vierra attempts to establish the "pertinence" of evidence of the girlfriend as follows, "Evidence of Bret Berier's character will prove his involvement in these activities which prove the existence of agreements from which Mr. Vierra's authority sprang." We fail to see how the existence of an extra-marital affair would establish Vierra's authority to make the expenditures in question. Even if Vierra could establish such a connection on appeal, the only argument made before the district court was that this evidence would again establish the "big picture." No arguments were made directly relating the affair to Vierra's authority to use the credit cards and write company checks as compensation. In fact, in a hearing held on March 13, 1992, Vierra expressly stated that he did not expect additional compensation for his efforts in regard to Bret Berier's affair. Thus, there was no showing that the asserted character trait of Bret Berier, i.e., an amenability to extramarital affairs, was "pertinent" as required for admission under I.R.E. 404(a)(2).

Therefore, we agree with the district court that this evidence was irrelevant to the crimes charged and was offered merely to impugn Bret Berier's character. This character evidence could not be admitted under I.R.E. 404(a)(2). The district court did not err in granting the state's motion in limine with respect to this evidence.

## II.

Vierra also challenges a number of other evidentiary rulings on appeal.

### A. ADMISSION OF EXHIBITS 2 THROUGH 7

Following Vierra's arrest, evidence was seized from his condominium which included large numbers of business records from Topnotch. Vierra claims that these records were improperly given to the Beriers and other witnesses and that files containing important information were removed. Some of the seized records were admitted as exhibits 2 through 7. Vierra objected to the admission of exhibits 2 through 7, although he later stipulated to the admission of exhibit 1, which was a compilation of important records, many of which were taken from exhibits 2 through 7. Despite his stipulation to admit exhibit 1, Vierra claims that the district court improperly allowed admission of exhibits 2 through 7.

Although Vierra makes a single argument regarding the missing files and the admissibility of exhibits 2 through 7, there are actually two separate issues. First, the proper remedy for the allegedly missing files was not the exclusion of the remaining files, but was instead a motion to dismiss. Vierra properly filed such a motion below, which was denied, but does not challenge the denial of the motion on appeal. Therefore, we will not consider that issue here. Second, Vierra does properly challenge the foundation upon which exhibits 2 through 7 were admitted, and therefore, we will consider this issue.

We first note the standard of admissibility where the "chain of custody" is in issue is whether the trial court can determine that, in all reasonable probability, the exhibit in question has not been changed in any material respect. *State v. Sena,* 106 Idaho 25, 674 P.2d 454 (Ct.App.1983); *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). Vierra does not, however, claim that the remaining admitted records had been tampered with or altered, but instead

that because of the mishandling of the evidence, no adequate foundation was made for their admission. Without deciding the question of the adequacy of the foundation, we must affirm the district court in this instance. We are constrained when reviewing evidentiary matters to follow I.R.E. 103, which states, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ..." Here, Vierra stipulated to the admission of exhibit 1, which was a compilation of documents, many of which were taken from exhibits 2 through 7. Given the fact that exhibits 2 through 7 were only admitted as foundation for exhibit 1, the admission of which Vierra stipulated to, no substantial right has been affected. Vierra makes the bare assertion that the admission of exhibits 2 through 7 "implanted the notion in the jurors' minds that Mr. Vierra misapplied funds without Bret Berier's knowledge." Vierra, however, does not cite the record for this proposition nor does he make any more specific allegations of prejudice. Therefore, the admission of exhibits 2 through 7, which were never directly used to incriminate Vierra, did not affect any substantial right under Rule 103, and as such, if their admission was erroneous, it would amount to harmless error.[1]

## B. ADMISSION OF EXHIBITS 48A THROUGH 48P

Vierra challenges the admission of the state's exhibits 48A through 48P, which were yellow carbon copies of a number of Topnotch business checks. Vierra claims that these exhibits were not disclosed by the state prior to trial and therefore were inadmissible under I.C.R. 16. The state, on the other hand, argues that these exhibits were only offered as rebuttal evidence and as such were not required to be disclosed prior to trial. We agree.

■ "Rebuttal evidence" is evidence that explains, repels, counteracts or disproves evidence which has been introduced by or on behalf of an adverse party. *State v.*

*Olsen,* 103 Idaho 278, 281, 647 P.2d 734, 737 (1982); *State v. Sorrell,* 116 Idaho 966, 968, 783 P.2d 305, 307 (Ct.App.1989); *State v. Stevens,* 115 Idaho 457, 459, 767 P.2d 832, 834 (Ct.App.1989). When reviewing a decision to admit rebuttal evidence, we recognize that the lower court has broad discretion in making the initial determination to admit or reject the evidence. We will not overturn such a decision unless it is shown that the lower court abused its discretion. *Olsen, supra; Stevens, supra.*

■ The district court determined that the yellow carbon copies were rebuttal evidence because Vierra had testified that these copies were readily available for Bret Berier's inspection. The introduction of the copies, which contained several gaps in the numerical sequence, served to show that many of the copies had been removed from Topnotch's office. We agree with the district court that this evidence was properly admitted as rebuttal evidence and did not need to be disclosed prior to trial. As claimed at trial, the state had no intention of using the evidence until after Vierra made his statements on direct examination. Further, the evidence was not exculpatory in nature and, therefore, was not subject to the automatic disclosure requirement of I.C.R. 16(a). Therefore, we cannot say the district court abused its discretion in admitting in this evidence.

## III.

Vierra also challenges the admission of evidence that related to uncharged acts committed by him. Vierra claims that this evidence was outside the scope of I.R.E. 404 and was not properly disclosed prior to trial. The state argues that the evidence showed Vierra's intent as well as Vierra's plan or scheme to defraud the Beriers. The district court admitted the evidence, finding that it fell within the scope of I.R.E. 404(b) and also was admissible as impeachment evidence. We agree.

---

1. The ruling of this Court should not be read as condoning any failure of the state to properly list in detail and inventory evidence seized or the practice of returning physical evidence to victims or others.

The evidence in question related to a $1,300 check that Vierra diverted to his own credit; a $300 deposit diverted to Vierra's Visa account; $434 diverted from a Topnotch account to Vierra's mother; a $400 transfer from Topnotch to Vierra through his Visa account and Vierra's unauthorized use of a Household Credit card issued to him without the Beriers' knowledge. Having heard the objection to this evidence, as well as the state's arguments, the district court ruled:

> I'll say, aside from the time to respond and failure to deliver, it appears to me that the items do fit within rule 404. They show motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
>
> Secondly, because of the testimony of the witness, with an explanation for each one of the items supposedly applying to the bonus, the increased amount make it less likely that it was being applied on bonus.
>
> So I think it's proper impeachment in addition to 404....

Generally, evidence of other crimes, wrongs or acts is inadmissible for the purpose of showing a person's character to prove that he or she acted in conformity therewith. I.R.E. 404(b); *State v. Pizzuto,* 119 Idaho 742, 750, 810 P.2d 680, 688 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *and overruled on other grounds by State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Needs,* 99 Idaho 883, 892, 591 P.2d 130, 139 (1979). If the evidence is offered for a purpose other than propensity, it may be admitted. Permissible purposes include knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. I.R.E. 404(b). Even though offered evidence may be relevant for an issue other than propensity, it still may be excluded if the trial court concludes that the threat of unfair prejudice substantially outweighs its probative value. I.R.E. 403; *Pizzuto,* 119 Idaho at 751, 810 P.2d at 689. Therefore, in order to admit evidence of other acts, crimes, or wrongs, the trial court must initially determine whether the evidence is relevant to a material issue other than propensity. If the evidence is deemed relevant, then the trial court must, in the exercise of its discretion, determine whether the probative value of the evidence is substantially outweighed by the danger of causing unfair prejudice to the defendant. I.R.E. 403; *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991).

Whether evidence is relevant is an issue of law. *See* I.R.E. 401 *and* 402; *Raudebaugh, supra.* Therefore, when considering a trial court's admission of evidence of prior misconduct, we exercise free review of the trial judge's admissibility determination under I.R.E. 404(b). However, when reviewing the determination that the probative value of the evidence is not outweighed by unfair prejudice—the second step of the analysis—we use an abuse of discretion standard. *State v. Rhoades,* 119 Idaho 594, 603, 809 P.2d 455, 464 (1991); *State v. Medrano,* 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct. App.1992).

In this case, we agree with the district court that the evidence was relevant to impeach Vierra's assertion that the sums he took were his agreed "bonus," for the greater the total amount, the less credible that explanation would be. Thus, our free review does not reveal any error by the district court.

As to the determination that the prejudicial effect did not substantially outweigh the probative value, we find nothing that indicates the district court abused its discretion. The evidence was highly probative of Vierra's conduct and directly undermined his "bonus" theory of compensation. On the other hand, the possible prejudicial effect of the evidence, if any, was minimal in light of the fact that the charged crimes included some forty-five counts of fraud or embezzlement. Therefore, the district court did not err in admitting the evidence of other uncharged, though similar, acts.

## CONCLUSION

The district court, given the arguments made before it, properly excluded evidence of

Bret Berier's other business dealings and an alleged extramarital affair. Exhibits 2 through 7 were properly admitted, despite Vierra's claim of tampering. Exhibits 48A through 48P were properly admitted as rebuttal evidence. The district court did not err in admitting evidence of other uncharged acts committed by Vierra. Therefore, the judgment of conviction is affirmed.

WALTERS, C.J., and LANSING, J., concur.